FILED

2009 Mar-18  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| PAUL D. MILLER, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:07-CV-01937-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

## I.    Introduction.

The plaintiff, Paul D. Miller, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Mr. Miller timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Miller was thirty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education. (Tr. at 232.)  His past work experiences include employment as a cook, security guard, and construction laborer.  *Id.* at 76, 232-34.  Mr. Miller claims that he  became disabled on August 31, 2003, due to pain in his back, legs, and feet; numbness in his head; high blood pressure; asthma; and bronchitis.  *Id.* at 66.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends

on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Miller did not meet the nondisability requirements for a period of disability and DIB, although Mr. Miller remained insured through the date of the decision.  (Tr. at 15.)  The ALJ further determined that Mr. Miller has not engaged in substantial gainful activity since the alleged onset of his disability.  *Id.* at 17.  According to the ALJ, Mr. Miller's obesity, asthma with asthmatic bronchitis, high blood pressure, and diabetes are considered "severe" based on the requirements set forth in the regulations.  *Id.* However, he found that these impairments, either alone or in combination, do not meet or medically equal any of the listed impairments in Subpart P, Appendix 1.  *Id.* at 18.  The ALJ further determined that Mr. Miller has the RFC to perform a reduced range of sedentary exertional work.  However, the ALJ found that Mr. Miller requires a sit/stand option; cannot have excessive exposure to lung and bronchial irritants; and  cannot  climb ladders, ropes, scaffolding, and stairs.  *Id.* at 19.

According to the ALJ, Mr. Miller is unable to perform any of his past relevant work,  is a "younger individual," as defined by the regulations and has a limited education.   (Tr. at 21.)   The ALJ determined that transferability of job skills is not material because claimant is not disabled under the Medical-Vocational Rules framework.  *Id.*  After considering Mr. Miller's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Mr. Miller can perform.  *Id.* at 22.  The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.  *Id.*

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971).  The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Mr. Miller alleges that the ALJ's decision should be reversed and remanded for six reasons.  First, Plaintiff believes that the ALJ erred by failing to consider whether he meets Listing 12.05C of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9. at 2.)  Second, Plaintiff contends that the ALJ failed to consider the effect that obesity has on his RFC.  *Id*.  Third, Plaintiff alleges that the ALJ did not articulate reasons for discrediting Plaintiff's subjective allegations of pain.  *Id*. Fourth, Plaintiff argues that the ALJ, by ignoring and not rejecting it explicitly, accepted his mother's testimony as credible.  *Id*.   Fifth, Plaintiff alleges that the vocational expert's testimony cannot constitute substantial evidence since the ALJ did not consider all testimony from Plaintiff and Plaintiff's mother. Therefore, Plaintiff alleges, the ALJ could not pose a hypothetical question that comprised all of Plaintiff's impairments.  *Id*. Sixth, Plaintiff maintains that the Appeals Council erred in refusing to review the ALJ's decision in light of new evidence that was submitted.  The Court will consider each allegation in turn.

A.    Meeting a Listing.

Plaintiff asserts that ALJ failed to consider whether Plaintiff's impairments meet section 12.05C of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9.)   A plaintiff is disabled if her impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  The Plaintiff has the burden of proving that an impairment meets a listed impairment.  *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d  660, 662 (11th Cir. 1987).  To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). While the ALJ must consider whether the Plaintiff's impairment meets a listing, he need not mechanically recite the fact that a Plaintiff does not meet a listing, as this fact may be implied from the record.  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984).

Listing  20 C.F.R. pt. 404,  subpt. P, app.  1, §12.05C requires "significantly subaverage general intellectual functioning" with the evidence

supporting onset before the age of twenty-two.  The Plaintiff must present a valid IQ score of 60-70 and have an additional physical or mental impairment which imposes an additional and significant work-related limitation in order to meet §12.05C. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

As the ALJ observed, Plaintiff did not allege that he met a listing.  (Tr. at 18-19.) Dr. Lary observed that Plaintiff appeared to have normal intelligence. *Id.* at 179-80. Moreover, no health care professional suggested that Plaintiff was cognitively impaired and  Plaintiff did not submit any IQ testing.   Additionally, the ALJ found that Plaintiff has a ninth grade education, despite the fact that the Plaintiff's alleged  illiteracy was "credible." *Id.* at 21,252.

Plaintiff contends that the ALJ's failure to fill out a Psychiatric Review Technique Form ("PRTF") warrants reversal.   (Doc. 9 at 4.) Where the Plaintiff has presented a colorable claim of mental impairment, the ALJ must complete a Psychiatric Review Technique Form. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).  Prior to the hearing, Plaintiff did not claim mental retardation under 20 C.F.R. pt. 404,  subpt. P, app.  1, §12.05C

or any other mental impairment whatsoever.  (Tr. at 84.)  Although Plaintiff indicated to the ALJ that he was illiterate and that he was enrolled in special education classes, Plaintiff did not base his claim for disability on anything other than physical impairments.  *Id.* at 252.  Additionally, medical records from Plaintiff's physicians all note that Plaintiff was not mentally impaired.  *Id.* at 165, 180.  There is no error in the ALJ's decision not to fill out at PRTF.

It appears to the Court that the Plaintiff did not carry his burden of proof by providing the necessary medical documentation.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997).  Therefore, there is ample evidence in the record to show that Plaintiff does not meet Listing §12.05C.  *See Hutchison*, 787 F.2d at 1463.

B.    Effect of Obesity on RFC.

Plaintiff alleges that there is not substantial evidence to support the ALJ's determination that  Plaintiff is capable of sedentary  work that requires reaching. (Doc. 9 at 4.)  Specifically, Plaintiff asserts that the ALJ erred in ignoring consultive examiner Dr. John Lary's opinion of the effect

of Plaintiff's obesity on his ability to reach.  (Doc. 9 at 9.)  The ALJ may "reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). However, he must state with particularity the weight he gives to different medical opinions and the reasons why. *Id.* Moreover, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The Court must also be aware of the fact that opinions such as the application of vocational factors "are not medical opinions, . . . but are instead opinions on issues reserved for the [ALJ] because they are administrative findings. . ." 20 C.F.R. §§ 404.1527(e), 416.927(d).

Dr. John Lary evaluated Plaintiff on November 15, 2005, at the request of Disability Determination Services ("DDS").  (Tr. at 178.)  Dr. Lary found that Plaintiff had no clubbing of the digits and that he had a normal range of motion in his arms save for 130/180 degrees of abduction in his shoulders. *Id.* at 180.  Specifically, there were "no enlarged, swollen, red, warm, tender, or deformed joints present." *Id.* at 180.  Regarding Plaintiff's hands, Plaintiff was able to make a good fist with both hands and was able

to touch the tip of his thumb to the tips of all fingers. *Id.* at 180. Dr. Lary observed that there was no tenderness in the small joints of the hands. *Id.* at 10.) Dr. Lary concluded his evaluation by opining that Plantiff's obesity impaired his ability to reach. *Id.* at 181. The ALJ concluded that Plaintiff retained the ability to perform sedentary exertional work that required reaching. *Id.* at 21. The ALJ did not weigh the consultive examiner's (Dr. Lary) opinion heavily and pointed out that the opinion concerning the Plaintiff's limitations was far too general to be useful. *Id.* at 21.

Plaintiff contends that substantial evidence does not support the ALJ's determination that he can perform sedentary work that involves reaching. (Doc. 9 at 9.) Social Security Ruling (SSR) 85-15 defines reaching as the ability to extend the hands and arms in any direction. *See* Soc. Sec. Rul. 85-15, 1985 WL 56857, at *7 (S.S.R. 1985). There is substantial evidence in the record that indicates the Plaintiff's continued ability to reach after his August 31, 2003, date of alleged disability. *See Bloodsworth*, 703 F.2d at 1240. For example, the state agency consultant on November 18, 2005, opined that Plaintiff's ability to "push and/or pull" was unlimited, and that Plaintiff had no manipulative limitations on reaching in all directions

including overhead.  (Tr. at 190.)  Moreover, Plaintiff, in his own Physical

Activities Questionnaire, does not make any reference to any physical

limitation on the ability to extend his hands and arms in any direction.  *Id.*

at 60-65.  Dr. Lary's own objective findings indicate that the only burden on

reaching that the Plaintiff could have is a limited range of motion at the

upper extreme of shoulder abduction.  *Id.* at 181. However, Plaintiff

indicated to Dr. Lary that he is capable of putting on a T-shirt himself--an

action that is difficult with significant range of motion difficulties.  *Id.* at

186.

    For these reasons, the Court finds that the ALJ had good cause to

disregard Dr. Lary's opinion.  Consequently, the ALJ's decision, that Plaintiff

is able to engage in sedentary exertional work involving reaching, is

supported by substantial evidence.  *See Bloodsworth*, 703 F.2d at 1240.

    C. Plaintiff's Testimony .

    The Plaintiff alleges that the ALJ erred by failing to articulate reasons

for finding Plaintiff's testimony not credible.  (Doc. 9 at 12.)  Where a

plaintiff attempts to establish a disability through his own testimony, "[t]he

pain standard requires (1) evidence of an underlying medical condition and

either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In determining whether the pain standard is met, the credibility of the plaintiff's testimony must be considered. *Lamb v. Bowen,* 847 F.2d 698, 702 (11th Cir. 1988). If the ALJ does not credit the plaintiff's testimony, he must articulate explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The ALJ's credibility determination does not have to cite particular formulations; however, there cannot be a broad rejection that prevents this Court from concluding that the ALJ considered the entirety of the medical evidence. *Dyer*, 395 F.3d at 1210.

The regulations further direct that the ALJ will consider "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating

or nontreating source, and observations by our employees and other persons." 20 C.F.R. § 404.1529(c)(3).

In the present case, the ALJ explicitly found that Plaintiff's "allegations of limitations are so extreme as to appear implausible." (Tr. at 20.)  Specifically, the ALJ noted that Plaintiff received unemployment benefits--which required Plaintiff to certify that he was ready, willing, and able to work--after his alleged disability onset date.  *Id.* at 20.  In addition, the Plaintiff testified that he continued to look for non-sedentary work after his alleged onset date.  *Id.*  The Plaintiff's largest limitations are his limited ambulatory ability stemming from numbness and swelling of his legs and his tendency to drop things.  *Id.* at 21.  The ALJ noted that the consultive examiner found that Plaintiff can walk normally with good muscle strength. *Id.* at 181.  Additionally, the consultive examiner found no evidence of anesthesia or paresthesia . *Id.* at 181. Moreover, the Plaintiff arrived at the hearing using an assistive device that was not prescribed and was not needed according to the medical evidence.  *Id.* at 20.  Finally, the ALJ noted that the Plaintiff was not suffering from pedal edema and that Plaintiff had good grip strength in both hands.

Thus, the ALJ explicitly articulated his reasons for discrediting the Plaintiff's testimony and substantial evidence supports the ALJ's finding that, in the absence of objective and corroborating medical records, Plaintiff's subjective complaints were overstated. *See Osborn v. Barnhart*, 194 Fed. App'x 654, 665 (11th Cir. 2006)

D. Testimony of Plaintiff's Mother.

The Plaintiff asserts that the ALJ erred in disregarding the testimony of the Plaintiff's mother. (Doc. 9 at 10). The ALJ must "state specifically the weight accorded to each item of evidence and the reasons for his decision." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). "The testimony of family members is evidence of plaintiff's subjective feelings of pain." *See Osborn*, 194 Fed. App'x at 665 (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253-55 (11th Cir. 1983)). However, "[e]ven if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements . . . we will not find error if the credibility determination was implicit in the rejection of the plaintiff's testimony." *Id.*

In the instant case, the Plaintiff's mother testified as to Plaintiff's difficulty with mobility, his back pain, and his leg pain.  (Tr. at 257-58.)  She also testified that Plaintiff experienced swelling in his legs and that he stays home with her most of the day.  *Id.* at 258.

The ALJ clearly discredited Plaintiff's subjective allegations regarding the intensity, persistence and limiting effects of his condition.  (Tr. at 20.)  The ALJ specifically addressed  Plaintiff's allegations of mobility problems, back pain, and leg numbness and swelling.  *Id.* at 20-21.  Therefore, while the ALJ could have mentioned Plaintiff's mother's testimony, the Court concludes that the ALJ's specific and explicit credibility determination as to Plaintiff's testimony inherently rejects Plaintiff's mother's repetitive testimony as well.  *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981).

E. Vocational Expert's Hypothetical Question.

Plaintiff argues that the vocational expert's testimony was erroneously considered because the expert responded to an incomplete hypothetical question.  Specifically, Plaintiff contends that the hypothetical question did

not contain Plaintiff's need to elevate his legs and his inability to reach. (Doc. 9 at 15.)

The ALJ must pose a hypothetical question which includes all of the plaintiff's impairments in order for the vocational expert's response to constitute substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is not required to include limitations in the hypothetical that were properly rejected as unsupported. *Allen v. Barnhart*, 174 Fed. App'x 497, 499 (11th Cir. 2006); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The ALJ's hypothetical question included the limitations of unskilled sedentary work, with an absolute restriction on climbing stairs, ropes, ladders and scaffolding; and on exposure to atmospheric pollutants. (Tr. at 252-53.) The ALJ also included illiteracy as a limitation. *Id.* at 253. Based on the vocational expert's response, the ALJ found that a sufficient number of jobs existed in the national economy for the Plaintiff. *Id.* at 22.

As discussed above, the ALJ had good cause to disregard the testimony that Plaintiff relies on to show the inability to reach. Moreover, the ALJ explicitly discredited Plaintiff's testimony regarding the numbness and

swelling in his legs which were the purported causes of Plaintiff's need to elevate his legs.  (Tr. at 21, 243.)   Consequently, the ALJ did not have to pose a hypothetical question that included Plaintiff's limitations of inability to reach and the need to elevate his legs.   The Court finds that the hypothetical that the ALJ posed to the vocational expert and subsequently relied on was accurate.  *See Moore v. Astrue*, 256 Fed. App'x 330, 332 (11th Cir. 2007).

F. The Appeals Council.

The Plaintiff alleges that the Appeals Council erred in its refusal to review the ALJ's decision.  (Doc. 9 at 17.)  Specifically, Plaintiff alleges that the Appeals Council erred in refusing to consider the evidence of Dr. Gordon Kirschberg's July 12, 2007 examination.  *Id.* at 18.

42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods--"sentence four remands" and "sentence six remands".  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261, 1269 (11th Cir. 2007).  42 U.S.C. § 405(g) sentence four provides the court "power to enter upon the pleadings and transcript of the record, a judgment    affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).  A sentence four remand is appropriate when the Plaintiff properly presented the new evidence to the Appeals Council. *Ingram*, 496 F.3d at 1269.  When remanded, the Appeals Council may decide the action or it may remand the case back to an ALJ to take action and issue a decision.  *See id.* at 1261.  Remand is appropriate when the entire record, including evidence submitted for the first time to the Appeals Council, does not support the ALJ's decision with substantial evidence. *See id.* at 1262; *see generally Daniel v. Gardner*, 390 F.2d 32, 34 (5th Cir. 1968) (holding that remand to Commissioner to consider new evidence was appropriate).

The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record. *Ingram*, 496 F.3d at 1261. When reconsidering the Appeals Council's denial of review, the Court must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence [the Appeals Council] must consider in making its decision whether to review the ALJ's decision." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).  The new

evidence must relate back to the time period on or before the date of the ALJ's decision and new evidence is material if there is a reasonable possibility that the new evidence would change the administrative result. 20 C.F.R. § 404.970(b)); *see Falge*, 150 F.3d at 1323.

Dr. Kirschberg examined Plaintiff on July 12, 2007, which was after the ALJ's decision of May 18, 2007.  (Tr. at 213.)  Dr. Kirschberg diagnosed Plaintiff with diabetes, hypertension, and some symptoms of edema in the legs.  *Id.* at 214.  Dr. Kirschberg also found evidence of diabetic neuropathy which accounted for the pain, numbness, tingling, and weakness in Plaintiff's legs.  *Id.* at 214.  Moreover, Dr. Kirschberg recommended a complete asthmatic workup.  *Id.*  The objective findings reported by Dr. Kirschberg included: absent deep tendon reflexes in upper and lower extremities save for the right ankle; swollen legs; profuse limping; the inability to bend or extend to the side; and a limited forward flex of 10 degrees.  *Id.*  Dr. Kirschberg filled out a Physical Residual Functional Capacity Questionnaire where he opined that, during an eight hour workday, Plaintiff: could use his hands about 10% of the time for grasping, turning, and twisting; could use his arms for reaching about 10% of the time; and

could not use his fingers for fine manipulation at all during the workday.  *Id.* at 218.  Additionally, Dr. Kirschberg suggested that the Plaintiff should carry loads of less than ten pounds rarely and should elevate his legs during prolonged sitting.  *Id.* at 217.

The Commissioner claims that since Dr. Kirschberg is a one-time examiner that his opinion is not entitled to the deference given to a treating physician.  (Doc. 8 at 15.)  However, there is no treating physician's opinion in the file.  Moreover, the ALJ relied heavily on the findings of consultative examiner's (Dr. John Lary) examination.  (Tr. at 21.)  Dr. John Lary was a one-time examiner.  *Id.* at 178.  Additionally, the ALJ had to decide Plaintiff's RFC based solely on the general opinion of Dr. Lary and the discredited, subjective testimony of the Plaintiff.  *Id.* at 20-21.  Dr. Kirschberg's post-hearing exam is the first to give a medical basis,  diabetic neuropathy, to Plaintiff's symptoms of numbness.  *Id.* at 214.  Therefore, Dr. Kirschberg's exam corroborates Plaintiff's pain testimony.  *Id.*  Finally, while the ALJ gave little weight to the Residual Functional Capacity Assessment filled out by a non-treating and non-examining physician, Dr.

Kirschberg, also filled out a Residual Functional Capacity Assessment that severely restricted Plaintiff's RFC.  *Id.* at 215.

Since there are no treating physicians in the file, only two examining physicians in the file, and since Plaintiff's testimony was discredited because it was implausible, the Court finds that there is a reasonable possibility that the consideration of Dr. Kirschberg's examination will change the administrative result.  *See Ingram*, 496 F.3d at 1261.  Accordingly, the Court finds that Dr. Kirschberg's testimony should be considered on remand.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Miller's arguments, the Court finds that the action is due to be remanded for consideration of the effect of Dr. Kirschberg's exam on Plaintiff's RFC.  A separate order will be entered.

Done this 18th day of March 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671